## William Ennor

### v.

## Thomas H. Hodson.

*Negotiable Instruments—Note—Action by Assignee—Defenses—Holder for Collection—Settlement by Maker with Payee—Fraud—Instructions and Evidence—Review of—Signature—Practice—Verification of Plea—Time —Trusts—Dissenting Opinion.*

1. The maker of a promissory note may settle the same with the real owner, and thereby defeat an action thereon brought by a holder merely for collection. Questions as to the sufficiency of the amount paid in settlement and whether the owner has been defrauded, can not be raised in such action.

2. In an action on a promissory note, it may be shown that the plaintiff is merely a holder for collection, in order to let in the defense of payment and settlement made to and with the payee.

3. The court below properly allowed, after the trial commenced, the verification of a plea denying the execution of the indorsement on the note in question.

4. In the case presented, this court, upon a review of the instructions and the evidence, finds that there was no error in giving, modifying or refusing the instructions asked, and that the evidence supports the verdict for the defendant.

5. Where a trustee has placed himself in a position antagonistic to the trust, he can not claim any benefit under the same.

6. A witness having testified that he is acquainted with a person's signature from seeing it attached to papers known to have been signed by him, is competent to testify to a supposed indorsement by such person.

[Opinion filed December 13, 1888.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon. JOSEPH M. BAILEY, Judge, presiding.

Messrs. D. & T. J. SHEEAN, for appellant.

Messrs. E. L. BEDFORD and WILLIAM SPENSLEY, for appellee.

LACEY, P. J. The appellant sued the appellee in an action of assumpsit on a promissory note given by the latter to Alice Ennor, and averred to have been indorsed to appellant. The note was given in the sum of $6,000, without interest, if paid when due, dated September 18, 1882, and due in twelve months from date.

There was a plea of the general issue and notice given in accordance with the provisions of the statute of several special defenses. 1. That the note was never indorsed by the payee to appellant. This was accompanied by affidavit sworn to. 2. The appellee, without notice of any indorsement, paid the payee the said note in full in a deed for eighty acres of land and the sum of $3,442.43, in full satisfaction of the note. 3. That the note was only held by said appellant as the agent of Alice Ennor, and that it was indorsed fraudulently, and that the appellant paid no consideration for the note. The cause was tried by a jury and resulted in a verdict in favor of appellee, and the court, after overruling a motion for a new trial, gave judgment against the appellant for costs, from which judgment this appeal is taken.

On the trial of the cause two defenses were particularly relied on. The first was that the note had never been indorsed by the payee, and hence no recovery could be had on it in the name of appellant as the legal holder, as was attempted.

Ennor v. Holson.

The second was that even if the note had been indorsed by the payee, it was only indorsed for collection, and that after such indorsement the appellant's agency for collection had been revoked by the payee, and that she had settled the note in full with the appellee, and that nothing remained due on it.

Concerning the first issue in regard to the indorsement, the evidence was conflicting and contradictory, but as we view it, sufficient to sustain the verdict. If that had been the only issue, and if the instructions given for appellee had not laid down the law as to the second point of the defense, it would not be necessary to examine the case further. But as the jury may have found for appellee on the theory that, while the note was actually indorsed by Alice Ennor, yet she was the equitable owner and had received full satisfaction of it from appellee, it results that the instructions and rulings of the court concerning the last named issue must be correct, and we must pass on those questions also. We must also pass upon the complaint of the appellant that the court erred in modifying his second and fifth given instructions, the modification complained of being that the court so charged them as to make the right to recover depend on the appellant being the equitable as well as legal owner of the note, instead of his being the legal owner only, as they were offered by appellant. This action of the court is one of the matters most seriously complained of by counsel for appellant. In discussing the merits of the defense offered, we will confine ourselves to the facts and circumstances and the law thereto applicable concerning the alleged payment of the note to Alice Ennor. It appears that appellant is the father of Alice Ennor, and that on May 29, 1878, he deeded to Alice the 160 acres of land afterward sold to the appellee, and for which the note in question was given, for a named consideration in the deed of $4,500, which deed was duly recorded in La Fayette county, Wisconsin, where the land was situated, January 17, 1879. Alice Ennor, on the 18th day of September, 1882, deeded the land in question to the appellee in consideration of $6,000 named in the deed, and for which the note in question was given to her for the amount. It appears that the appellant throughout the

entire transaction acted for Alice in making the sale of the
land to appellee, taking the note and transacting the busi-
ness generally. It appears, too, that Alice did not pay her
father any money for the land. The appellant, after taking,
the note in question, held the same in his own possession, and
claims that Alice, within about one month after it was given,
indorsed it to him in her own hand, as appeared on the back
of the note, the name of Alice purporting to be her own hand-
writing. Some time prior to May, 1885, Alice, who was at
the time of the trial about fifty-nine years old, and her father,
had a falling out, and she undertook to repudiate her father's
right to act as her agent concerning the note any farther,
and on the 4th of May, 1885, entered into a written contract
with appellee wherein it is recited that the land in question
was deeded to him under a contract that he was to subdivide
said land into ten-acre tracts and sell the same, and make deeds
to purchasers, and 'receive for such services all sums or
amounts which might be realized over and above the sum of
$6,000, and was to be allowed, over and above the sum of $6,000,
the sum of $100 for expenses, and that appellee was to be
allowed at least $30 per acre for the land remaining unsold
when the agency should terminate; and further reciting that
appellant retains said note and threatens to sue it and get the
money into his own hands against her will, and reciting that
the land had been attached as the property of appellant and
the moneys realized from the said sale placed in the hands of
a trustee to abide the event of the suit. It was therefore
agreed in and by said instrument, and she did in terms revoke
the agency of appellant in the matters in question and forbid
his bringing suit against the appellee in the note, and she
further agreed to receive the land remaining unsold (the
eighty acres) back, which had been conveyed to appellee in
trust, and the further payment to her of the $3,442.43 remain-
ing in the hands of E. L. Bedford, as trustee, in full satisfac-
tion of her claim against appellee. The appellee showed in
evidence a receipt signed by said Alice, dated August 24, 1886,
in full for the $3,442.43, and a deed back to her of the eighty-
acre tract of land, in full compliance with the terms of said

last named agreement. The appellee further showed a notice in writing signed by Alice, directed to appellee, of August 16, 1886, notifying him that she never signed a note for $6,000 to her father for the Elk Grove land and notifying him she would hold him responsible for the amount and authorizing him not to pay it to her father, as it belonged to her. The appellee further showed an indemnifying bond given by Alice to him of the same date with the receipt, agreeing to keep him harmless against the said note and all costs and expenses by reason of its being in the hands of appellant, and against any claim he or any one might have in the note. The evidence no doubt shows that the execution of the contract, the notice and the subsequent payment and accord with Alice was done at appellee's instance.

The appellee sold, in addition to the land for which the $3,442.43 was realized, one other twenty-acre tract, and afterward received a deed back for it, but realized the sum of $400 for it. The deposit of $3,442.43 drew four per cent. interest per annum while the litigation between appellant and the Cleveland Iron Company proceeded, and principal and interest at the time of the date of said receipt amounted to about $3,700, which, added to the $400, makes $4,100 realized by appellee out of the land. The evidence discloses that appellee only paid Alice Ennor, in cash, $2,400, and gave her a deed for the eighty acres of land unsold, leaving in his hands $1,790 unaccounted for. The evidence shows that appellee had some arrangement with Alice by which he was to keep this amount, but what that was—whether for fees for legal services (for appellee was an attorney at law) or for what purpose—the evidence does not disclose. It is claimed, in the argument of counsel for appellant, that the land in question was deeded by appellant to Alice Ennor, and the $6,000 note taken in her name as a scheme to prevent the Cleveland Iron Company from reaching the land. It appears that the Cleveland Iron Company had a large judgment which they were trying to collect of the appellant, or, at least, it was in existence at the time of his deed to his daughter. If this theory were correct, and the land was really the land of appellant,

and was neither intended as a gift to his daughter nor was conveyed to her in consideration of his indebtedness to her for money used by him, left to Alice by her mother, and Alice indorsed the note back to appellant as his own, it would be conceded that the appellant had a right to recover on the note in question, notwithstanding any settlement made by appellee with Alice. The possession of the note by appellant with the indorsement would be sufficient notice to appellee that the note belonged to appellant. But, on the other hand, if the appellant never had any interest in the note except to hold it as the mere agent of Alice, we think it equally clear that she had a right to collect it from the maker, and the mere fact that the legal title to the note was in appellant for collection and that he held the possession, would make no difference. He, having no interest in the note, could not insist on its collection after it had been settled with the real owner. And such settlement may be made with the maker by the real owner of a promissory note as against the mere holder of it for collection, either before or after the suit is instituted. Even in case of the indorser of a note holding it as collateral security for a sum less than the face of the note and interest, the maker may have his defense against such indorser as he would have had against the payee, as to any balance due on the note over and above the amount for which the payee held it for security, even though the indorser were an innocent holder. Such defenses are allowed because it is equitable to do so, and it prevents circuity of action. Steere v. Benson, 2 Ill. App. 260; Mayo v. Moore, 28 Ill. 428; President, etc., v. Chapin, 8 Met. 40; Jones v. Heffert, 2 Starkie, 3 Eng. C. L. 356; Atlas Bank v. Doyle, 9 R. I. 76.

The same principle is involved here, and, on the theory of appellee's case, its application is more forcibly demanded, for the appellant received the indorsement knowing of the peculiar contract concerning the deeding of the land in question to the appellee, besides accepting the indorsement of the note as a mere volunteer. We therefore perceive no error in the modification of the appellant's second and fifth instructions in the particular complained of. The way the instructions read

when presented to the court, the entire defense of satisfaction of the note by agreement between Alice and appellee was cut off, provided appellant showed by a preponderance of the evidence that the note was actually indorsed by Alice to him and he retained the possession thereof; for then the legal title remained in him though the actual ownership might be in Alice, with whom the appellee had settled. It would have been error to have given the instruction as drawn. It follows, also, that the appellee's instructions given by the court, based on the idea of equitable title in Alice, the payee, and settlement with her, were proper. and rightfully given.

The objection made that the court allowed the appellee to file a verification to the plea denying the execution of the indorsement after trial commenced, is not well taken. Under our present statute such amendments are allowable at any time before judgment; nor did the court err in refusing to strike special notice of defense from the files. No reason is suggested why such action was erroneous, and none occurs to us.

The objections to the admission of evidence for appellee are mostly answered and overruled in principle by the suggestions that we have already made, and we perceive no error in allowing appellee to testify to the supposed signature of Alice Ennor to the indorsements. A sufficient foundation was laid. He testified that he was acquainted with her signature from seeing it attached to papers known to be signed by her.

The appellant's counsel contend that the court erred in refusing to give the appellant's sixth to sixteenth refused instructions, inclusive; but no cause is shown in their brief why it was error to refuse them, except as to the seventh to fourteenth inclusive. The theory of the eleventh instruction was that, if the note had been assigned by Alice Ennor to the appellant before it had become due, and had not been paid to him, then he must recover. The reason given for supposing this one good is that appellee was cut off from making his proposed defense, because it was attempting to show failure of consideration or want of consideration for the assignment, and that, it is insisted, can not be done under the general issue, and must be specially pleaded, citing Sheldon v. Lewis, 97 Ill. 640.

It is claimed in appellant's brief also that it was error to refuse the appellant's seventh, eighth and eleventh refused instructions, for the further reason that the maker can not question, in a suit against him by the assignee, what consideration the assignee paid for the note, as it does not concern the maker, citing Edwards on Bills and Promissory Notes, 250, and Burnap v. Cook, 32 Ill. 168. The law cited can not have any application when applied to facts in this case and to the defense set up. There appears to be a misapprehension as to the nature of the defense relied on. It is not that there was no consideration, or that there was a failure of consideration for the assignment, or that the assignment was void for want of consideration, or that the assignment did not transfer the legal title so that suit could be brought in the name of the appellant. It is admitted that the assignment is valid, so that suit may be brought in the name of appellant, provided there was an assignment in fact; but the defense is that the appellant was, and had been, a mere holder for collection, and not entitled to the same protection as to defenses against the note as an innocent purchaser before maturity for value. The conditions of his holding could be shown in order to let in the defense of payment and settlement made to and with the payee, and the rules above cited are not violated by admitting evidence showing in what capacity appellant held the note in connection with and as a part of the chain of defense. The notice was amply broad to admit it.

It is insisted that the fifteenth refused instruction asked for by appellant should have been given. This holds that, "if appellee, with the intention of dividing up a large sum of money between himself and his brother and E. L. Bedford, made the payment to Alice Ennor, as claimed by said defendant, then such payment to Alice is no payment of said note," etc.

This point seems to be much relied on, and a large part of the appellant's argument is taken up in trying to show the bad faith, improper conduct and fraudulent intentions of appellee, his brother and Bedford, as regards the fund in controversy. It is also attempted to show that appellee has failed to pay all that he ought to have done to Alice in the settlement of the

note; that he improperly retained $1,700. As we view the matter these considerations are wholly immaterial, provided in reality the money due on the $6,000 note was equitably due to Alice Ennor, and the appellant only held the note as her agent for collection. If Alice Ennor was defrauded by appellee it was no concern of his. She would be the proper person to bring him to account, and not the appellant. And it is presumable she will do so in some other proceeding, if she is not fully satisfied with the settlement. On the hypothesis that the note is hers, the appellant can not interfere. The evidence does not fully disclose and we need not inquire for what consideration appellee was allowed to retain the money he did. It follows, then, that instruction No. 15, offered by appellant, was properly refused.

As to the other refused instructions, as there is no error pointed out, we will not examine them, as we suppose if there had been any objection to refusing them it would have been shown what it was. It was not error to command and not advise the jury to find in favor of appellee on the hypothesis contained in his first and second instructions. We think that there was ample evidence on which to base appellee's third instruction. The appellee had a clear receipt and quittance as against the note from Alice. It was paid partly in money and partly in a deed for eighty acres of land. It was partly paid and partly accorded and was receipted for in full; and if she was the equitable owner, that was good as to appellant, and neither in this instruction nor the fourth could the jury be misled because the instruction used the word "pay" Alice Ennor, as claimed by the defendant, instead of "settled," as set out in the fifth. The fifth instruction given for appellee is proper, as we view the law.

The last objection made by appellant's counsel, that appellee can not set up the defense sought to be made for the reason that the will of Grace Ennor, mother of Alice, gave appellant "power and authority to control Alice Ennor's property during his lifetime," will be considered hereafter.

We have now considered all the appellant's objections concerning the giving, modifying and refusing instructions,

and the admission of evidence, and it now remains to be considered whether the evidence justifies the verdict. To this question we will now address ourselves. It will be observed that the appellant did not offer himself as a witness, and the only evidence he has to rely on to show that he was the owner of the note in his own right, is the fact that he deeded the land to appellee without any consideration being paid at the time, and that after the deed was made to appellee for the land, and the note given to Alice Ennor, he retained possession of the note and procured Alice to indorse the note to him, which last claim is hotly contested by appellee and Alice, and perhaps another fact, that about that time he was endeavoring to defeat the collection of the judgment owned by the Cleveland Iron Company. Out of these facts and circumstances appellant's counsel infer that he deeded the land to Alice, for the purpose of defeating the collection of this judgment. Against these facts and circumstances we have the following evidence:

1.   Alice Ennor testified: "On September 18, 1882, my father had everything in his own hands and did as he had a mind to with all the property my mother left me. This land was bought with money my mother left me. He came over and got me to sign the deed to Mr. Hodson; said it was better to sell it than to pay taxes. I paid the taxes that year, which was $49.50."

2.   M. Y. Johnson was produced as a witness on the part of appellee, and testified as follows: "I know plaintiff; was attorney for the Cleveland Iron Company against him. I recollect of his testifying in February, 1882, in regard to the lands in Wisconsin in controversy in this suit. It was in that proceeding where Mr. Ennor was praying to be discharged from arrest in an insolvency proceeding. He testified he was the agent of Alice Ennor; that she received some $8,000 from her mother's will; that $4,000 of the money was in his hands as agent for Alice; that he had a mortgage on this land; that the interest was not paid and he foreclosed it; when it was sold by the sheriff he and some other gentlemen went out there and he bid it off for Alice Ennor, but the sheriff misunderstood and

struck it off in his name, and the deed was made out to him, and he immediately transferred the deed to Alice Ennor; that is the substance of it," etc.

3. In addition to this, the will of Grace Ennor, the mother, was introduced in evidence on the part of appellee, which showed that the testatrix gave "to Alice all personal property belonging to her, unconnected with her husband," in trust to Wm. Ennor, her husband, in trust for her daughter, Alice, for the purpose hereafter named; also moneys due from her husband, as follows: "All my personal property I give to my only child alive, Alice Ennor; all the furniture in the house; also, my gold watch, with all my clothes; also, the policy of insurance in the Northwestern Insurance Company, at Milwaukee, on my husband's life for ten years, if he lives," which insurance was made for her sole benefit. The will further created Wm. Ennor sole trustee for her daughter, Alice, to act and transact all her affairs during his natural life, without control of her husband, etc. The will was duly probated.

The above seems to be the substance of all the evidence on the question of the ownership. We think there is abundance of evidence from which the jury might properly find for the appellee and this question of the ownership of the note.

It will be seen as above stated that appellant did not go upon the witness stand to support his theory of the case or claim under oath that the land was his; indeed, he could not have done so without convicting himself of perjury committed either at the one time or the other. Would the appellant, without his oath denying his former testimony, and on no more evidence than appears in the record now, have us believe that he had committed perjury in such testimony?

But it is suggested that he can hold the note and collect it as the trustee of Alice. This seems to be the last resort to which appellant flies to make out a case. We think under the circumstances he should not be allowed to benefit by such claim as this. As to any trusteeship he may have had, we think he has placed himself in such antagonistic position to the trust that it must be regarded as having been repudiated. It is not shown that he has ever attempted to administer the

property as Alice's agent or trustee. He made the deed directly to her without reservation, and by that means placed the land entirely under her control, without regard to the trust, and he should not be allowed to reclaim it. He has also brought this suit in his own name without mention of any trust in the declaration, and claims the money as his own, and if it is collected will hold it as his own. Even in his brief here he strenuously insists that the note is his in his own right, thus repudiating his trusteeship; and in taking an antagonistic attitude to it, we think he can not claim the benefit of it. Alice now has the money, or a greater portion of it, in her own hands, and the deed of the eighty acres in her own name, and the result would be, if appellant succeeds, she would be compelled, under her indemnifying bond to appellee, to surrender it all to appellee, and appellee be compelled to hand it over to him. Seeing that appellant is claiming this fund as his own, we think the law would not sanction such an injustice.

Seeing no error in the record the judgment of the court below is affirmed.

*Judgment affirmed.*

C. B. SMITH, J., dissenting. This is a very remarkable case from the beginning to the ending, and justifies the truth of history, or poetry, or both, "that truth is stranger than fiction." I reluctantly dissent from the judgment of the majority of the court in this case, for whose judgment, learning and justice I have great respect, and so feel that it is due to them as well as myself and the parties to the suit, to give the grounds of my dissent. I shall do so with as much brevity as possible consistent with a correct statement of the case, and enough of its facts to make myself understood. Anything like a full or substantial statement of all the facts leading to, through and to the end of this suit would prolong this opinion far beyond what I intend or what is necessary to enable me to state intelligently the ground of my objection to the judgment. Appellant, William Ennor, is now an old man about eighty years of age and a widower. On August 20, 1874, his wife, then living, was sick, and expecting soon to die, made this will, viz.:

"I, Grace Ennor, wife of William Ennor, being sick and under the impression that I shall not recover, do this day assign over all personal property belonging to me unconnected with my said husband, in trust to Wm. Ennor, my said husband, in trust for my daughter, Alice Ennor, for the purpose hereinafter mentioned; also all moneys due me from my husband, which is as follows: All my personal property I give to my only child alive, Alice Ennor; all the furniture in the house; also my gold watch with all my clothes; also the policy of insurance in the Northwestern Insurance Company, at Milwaukee, Wisconsin, on my said husband's life, or for ten years, if he lives, which insurance was made for my sole benefit. Now ·I appoint my husband, Wm. Ennor, my sole trustee for my daughter, Alice Ennor, wife of Martin Ennor, at Apple River, to act and transact all her affairs during his natural life, without the control of her said husband, he not to have nothing to do in her affairs. All to be managed by William Ennor, my said husband, as long as he lives.

" GRACE ENNOR. [Seal.]"

This will is the source of all the property, both real and personal (including the note sued on), hereinafter mentioned.

This will makes Wm. Ennor the trustee, to have possession of and control the property in trust for his daughter as long as he lives.

In settling the estate of his wife, Wm. Ennor had judicial proceedings against certain parties to enforce the collection of debts due his wife, resulting in his buying at a judicial sale 160 acres of land in Wisconsin, on a foreclosure of a mortgage deeded to his wife, and taking the deed in his name, but without recital in the .deed that he held in trust for his daughter.

Wm. Ennor, some time after this deed was made to him, became involved in litigation with the Cleveland Iron Company, and pending this controversy, conveyed this land to his daughter, Alice Ennor, but without any consideration in fact being paid to him for the land. While the land was then in his daughter's name, William Ennor proposed to Thomas H. Hodson to sell him the land and cut it up in ten acre lots and

sell it separately, and thus be able to realize better prices. After some preliminary negotiations between Alice and her father and Hodson, it was determined to make the sale, and the deed was executed by Alice Ennor to Thos. H. Hodson, for the sum of $6,000, and Hodson, then a young man without any property, or at least but little, gave his note payable to Alice Ennor for the $6,000, but without any security of any kind. The land was divided and parts of it sold at a good price, and the money received by appellee Hodson. About this time The Cleveland Iron Company attached the land as the property of Wm. Ennor, but this attachment was finally defeated and needs no further notice.

Some time after the note of $6,000 was made and delivered William Ennor claims that his daughter assigned the note to him; also, without any consideration in fact passing for such assignment. After the note became due William Ennor frequently demanded payment of Hodson, but was put off with one pretext or another until finally he flatly refused to pay the note, and told Ennor to sue on it, and that he would not get his money without suing.

After the land was conveyed to Thos. H. Hodson, he sold in one way or another, eighty acres, realizing the gross sum of $4,110, and still had eighty acres of the land left.

Appellee refusing to pay the note, this suit was brought to enforce payment by William Ennor. The declaration declared on the note and its indorsement to the plaintiff in the usual manner. Defendant pleaded the general issue and a special plea denying the assignment, and gave notice that he would prove on the trial that plaintiff only held the note as agent for Alice Ennor, and that he paid and fully settled with Alice Ennor for the full amount of the note. On the trial William Ennor, plaintiff, and W. D. Ennor, son of Alice Ennor, both swear positively that Alice Ennor signed the indorsement with her own hand, and that they saw her sign it. Martin Ennor, the husband of Alice Ennor, swears that he thinks it is his wife's signature.

Alice Ennor testifies that she never indorsed the note and that it was not her signature. Princess Ennor testifies that

she knew her mother's handwriting, and that the writing on the back of the note was not in her mother's handwriting.

The defendant, Thos. H. Hodson, testifies that he does not think the indorsement genuine; thinks it a forgery. This was all the evidence upon the question of the genuineness of the assignment. I think the proof in this case entirely fails to overcome the positive testimony of the witnesses, who swear that this woman signed the indorsement. But it was a material and vital question in the case, and called for accurate and correct instructions from the court.

Conceding all the equitable claims of Alice Ennor to the land and its proceeds, the note, it is clear, under the will of her mother in evidence, that the father was the legal custodian of all her property of every kind derived from her mother during his life, and that she did not have the right to take it out of his hands for any purpose. If he was abusing his trust, or squandering or wasting the estate, so as to forfeit his right to have the custody and control of this property, then the proper and only remedy was to go into a court of equity and have another trustee appointed. There is not one word of credible evidence in this case to show that William Ennor was abusing his trust, or was wasting the estate of his daughter, but, on the contrary, he was trying to possess himself of the money due on this note in strict compliance with the terms of the will. Alice Ennor and her accomplice were seeking to divest appellant of his right to control this estate without a shadow of right or authority.

The evidence to my mind is clear and conclusive beyond all reasonable doubt, that this man, Thos. H. Hodson, aided by his brother, deliberately set about to cheat appellant entirely out of this note, and to cheat Alice Ennor out of as much of it as it was possib'e to get her to submit to.

The defendant knew appellant held this note and was pressing him for collection, and that he claimed to be the legal and rightful owner of it by assignment, and yet, with this knowledge, he goes to Alice, who he knew did not have the note, and enters into a marvelous contract with her, getting her to release him from all responsibility on the note on payment to

her, as recited in the agreement, of a sum of $3,442.43 in full payment of this note, and the conveyance to her of the remaining eighty acre tract of this land; and yet, in the face of this writing prepared by the defendant and his brother (who is described by defendant as his "attorney"), the defendant himself swears that Alice Ennor was only paid $2,410, leaving in the hands of the defendant and his "attorney," who was his law partner in the office, the sum of $1,700 for some purpose unexplained by the defendant in this record. If the note was in fact assig ed to appellant, as he swears, then the fact that he was the legal and rightful custodian of it under the will was ample consideration for the assignment to him, and he could not be deprived of his right to recover on the note, by any defense setting up remote or ultimate equity in Alice Ennor to the note after the death of appellant. If he was entitled to the possession and control of the estate until his death, then there is no escaping the conclusion that he was entitled to possess himself of the proceeds of the land by note through the forms of law. On the trial below, there was no claim made in the evidence that William Ennor was acting as the agent of his daughter, but, on the contrary, he was charged with forgery in making the assignment on the note. Alice Ennor refused to call him her father and repudiated any right to act for her on his part. Under this state of the proof the plaintiff asked the court below to give the jury this instruction, as it would read without the words included in parenthesis:

"The jury are instructed by the court, that if you believe from the evidence, that the plaintiff is (both) the (legal and equitable) owner of the note in question, and was such owner within about a month after its date by assignment from Alice Ennor, and if you further believe from the evidence that no part of said note has been paid to the plaintiff, then you should find a verdict in favor of the plaintiff and assess his damages at whatever sum may appear due, as shown on the face of said note, notwithstanding you may believe from the evidence that the defendant has paid and settled with Alice Ennor for whatever sum she may have demanded in payment of said note."

Ennor v. Hodson.

But the court refused to give the instruction as asked, but modified the sense by inserting the words " both " and " legal and equitable," included in the parenthesis, and then gave it.

This modification of the instruction not only made it positively erroneous, but, instead of it being an instruction for the plaintiff, became one for the defendant.  The plaintiff had a right to have the instruction given if it contained a correct proposition of law, or, if not, to have it refused; or, if the court could so modify it as to state a correct rule of law in harmony with the plaintiff's theory of the case, then to do so; but it was unfair and unjust to the plaintiff to so modify his instruction as to make it directly in the teeth of what he claimed to the jury, and then give it as for the plaintiff, thus turning it into a weapon against him.  But, aside from this, I know of no rule of law which requires the legal holder of commercial paper to prove that he is also the equitable owner, before he can recover, nor do I believe any such case or authority can be found; and yet the above instruction told the jury in effect that, notwithstanding the plaintiff was in fact the lawful and legal holder of this note by assignment, and thus had the legal title, still that was not enough; he must go further and prove that he was also the equitable owner of the note.

In Burnap v. Cook, 32 Ill. 168, the Supreme Court say: " In this case the legal title to the note vested in the plaintiff at the time this suit was instituted.  It is not a question that effects the rights of these parties whether any or what consideration was paid for the note by plaintiff below.  The equities between the defendant in error and his assignor do not concern the plaintiff in error."

This case also holds that the legal title is sufficient to entitle the plaintiff to recover, and that the defendant can have no concern about the equities as between the legal holder and his assignor.  See also Mobley v. Ryan, 14 Ill. 51.  Under the authority of these cases the modification of plaintiff's instruction was erroneous.  But the court proceeds on an entirely different theory when instructing for the defendant, and gives these two instructions:

"The court instructs the jury that if they believe from the evidence that at the time the note in controversy in this suit was delivered to William Ennor he was acting as agent of Alice Ennor, and that the note in question was the property of Alice Ennor, and if they further believe from the evidence that at the time of the commencement of this suit said note was still in fact the property of Alice Ennor and subject to her control, and that, before the commencement of said suit, the defendant, Thomas H. Hodson, had settled with Alice Ennor to her satisfaction and paid her the full amount due on said note, then the jury should find the issues for the defendant."

"The court further instructs the jury that if they believe from the evidence in this case that Alice Ennor is the owner of the note in question, and that said William Ennor holds the same as her agent, and so held said note as such agent merely, and not in his own right, at the time the defendant paid said note to said Alice Ennor, if they believe from the evidence that the defendant did so pay the same to said Alice Ennor, as claimed by the defendant, that then the jury should find the issues for the defendant."

Besides adopting a different rule from the one given to the jury for plaintiff, these instructions are bad, because there is no evidence to support the assumption that defendant paid Alice Ennor the full amount of this note, nor is there any evidence or any claim below that appellant was acting as her agent. Both parties disclaimed any such theory.

This instruction was asked by the plaintiff and refused by the court:

"The court instructs the jury that if you believe from the evidence in this case that the note in question was assigned by Alice Ennor to the plaintiff before it was due, and that said note has not been paid to the plaintiff, then you' should find your verdict in favor of the plaintiff, even though it should appear from the evidence that the defendant Hodson settled with said Alice Ennor, and paid her money upon the note after it became due."

What the reason could be for refusing this instruction I am not able to comprehend. It was asked under the plaintiff's

theory that he was the owner of the note by assignment, and there was ample evidence in the record to support his theory. I think it was error to refuse the instruction. Mobley v. Ryan, 14 Ill. 51, *supra.* There was no other instruction given for plaintiff to take its place, but, on the contrary, many other instructions asked by plaintiff of a similar character, and stating correct principles of law, as I think, were refused by the court. In no instruction in the record was the plaintiff's theory of the case submitted to the jury, but, on the contrary, his own instructions were turned against him, and were thus made hostile to his position before the jury. Under the instructions the jury could only find for the defendant. I do not think the plaintiff has had a fair and just trial under the law in this case according to the due forms of law. I think the learned judge who tried the case has overlooked the rights of the plaintiff, and has unintentionally deprived him of the right of that trial by jury.

I think the judgment ought to be reversed and remanded.